_____
:
NANCY PASQUALE,                        :
                                       :        CIVIL ACTION
                        Plaintiff,     :
                                       :
        v.                             :        No. 09-1735
                                       :
GENERAL SCIENCES, INC.,                :
PETER ZAVITSANOS,                      :
ALICE ZAVITSANOS and                   :
EVELYN DOWNS,                          :
                                       :
                        Defendants.    :
_____ :


**<u>MEMORANDUM</u>**

**ROBERT F. KELLY, Sr. J.**                              **APRIL 19, 2010**

_____Presently before this Court are three Motions for Summary Judgment filed by General

Sciences, Inc. ("GSI"), Peter Zavitsanos, Alice Zavitsanos and Evelyn Downs ("Downs")

(collectively, "Defendants"):  (1) a Motion for Summary Judgment Regarding Number of

Employees ("Motion Regarding Employees"); (2) a Motion for Summary Judgment for Failure to

Establish a Prima Facie Case; and (3) a Motion for Partial Summary Judgment for Claims Barred

by Applicable Statute of Limitations.  For the reasons set forth below, Defendants' Motion

Regarding Employees will be granted and the remaining Motions will be denied as moot.

**I.      BACKGROUND**

        Plaintiff Nancy Pasquale ("Pasquale") filed a Complaint in this Court on April 24, 2009

against her former employer, GSI, and the individual Defendants, Peter Zavitsanos, Alice

Zavitsanos and their daughter, Downs.  In her Complaint, Pasquale claims that she was

discriminated and retaliated against by Defendants after Alice Zavitsanos discovered in 2003 that she had engaged in an affair with Peter Zavitsanos. Pasquale claims that the discrimination and retaliation continued through September 15, 2006, the date she alleges she was fired from GSI. (Compl. ¶¶ 32-36.) Defendants deny these claims.

Defendants contend that GSI is "a relatively small research and development company which is owned by members of the Zavitsanos family including [Peter] Zavitsanos, [Alice] Zavitsanos and their children. Only [Peter] Zavitsanos and Downs are involved in the daily management and operations of the company." (Defs.' Br. Supp. Mot. Regarding Employees at 6.) Specifically, during the time of the alleged discrimination, Defendants assert that: (1) Peter Zavitsanos served as co-founder and a one-sixth shareholder[1] of GSI; (2) Alice Zavitsanos was a one-sixth shareholder of the company; (3) Downs served as co-founder, chief financial officer and a one-sixth shareholder in the company; and (4) Pasquale served as part-time facility security officer and secretary of the company. Defendants allege that Peter Zavitsanos and Downs exclusively controlled all aspects of GSI, shared in the company's profits and losses, were not supervised by any individual and did not report to someone higher in the company.

The only basis for this Court's original jurisdiction is set forth in Count I of the Complaint wherein Pasquale asserts a claim against GSI under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000(e) et seq. ("Title VII").[2]

---

[1] Downs's affidavit states: "The shares of GSI are and have been equally owned by several of my family members as follows: (1) my dad, Peter Zavitsanos; (2) my mom, Alice Zavitsanos; (3) my brother, James Zavitsanos; (4) my brother, George Zavitsanos; (5) my brother, Thomas Zavitsanos; and (6) myself." (Defs.' Mot. Regarding Employees, Downs Aff. Ex. A ¶ 3.)

[2] Pasquale also brings Pennsylvania state law claims in Count II against all Defendants under the Pennsylvania Human Relations Act (the "PHRA") and claims in Counts III and IV solely against Peter Zavitsanos for breach of contract and promissory estoppel/detrimental reliance.

Defendants assert that if Count I is dismissed, we should "decline to retain jurisdiction over the state law claims and dismiss those claims without prejudice." (Defs.' Br. Supp. Mot. Regarding Employees at 7.)

On October 28, 2009, Defendants filed their Motion Regarding Employees. In their Motion, Defendants argue that GSI did not employ a sufficient number of employees to meet the definition of "employer" under Title VII, and therefore, Count I should be dismissed as a matter of law. Specifically, Defendants allege that GSI did not employ more than fourteen employees in 2005 or 2006.[3] Contrary to Defendants' assertions, Pasquale alleges that GSI employed at least sixteen people during 2005 and at least seventeen people during 2006. (Pl.'s Resp. in Opp'n to Mot. Regarding Employees, Pasquale Decl. Ex. C ¶¶ 6-7.) The individuals whose employment relationships are in dispute are: Peter Zavitsanos, Downs, Stokes, Ben Valocchi, Sr. and Ben Valocchi, Jr. (collectively, the "Valocchis"). (Hr'g Tr. 3:16-4:10, Mar. 19, 2010.)

In her counter-declaration, Downs describes Stokes as "an independent contractor who, from time to time, provided consulting services (chemical and thermal analysis and flight pay-load analysis) . . . ." (Downs Counter-Decl. ¶ 7.) In his affidavit, Stokes states that he was never an employee of GSI, but rather, an independent contractor who received a "1099-MISC form" accordingly. (Stokes Aff. ¶¶ 1-3.) Stokes also states in his affidavit that he has "never received any employee benefits such as[] a 401K plan, health benefits, etc. or any compensation other than that based on an hourly rate for consultation." (Stokes Aff. ¶ 4.) Defendants have also submitted

---

[3] In support of their argument, Defendants have submitted the following exhibits: (1) an affidavit by Downs; (2) a counter-declaration by Downs; (3) GSI's "end of the year payroll summary sheets" for the relevant years; (4) an affidavit by Ben Valocchi, Sr.; (5) an affidavit by Charles S. Stokes ("Stokes"); and (6) an affidavit by Peter Zavitsanos.

tax records for 2005 and 2006 to support their contention that Stokes was an independent

contractor and that "the extent of services that he provided to GSI varied from year to year

depending on GSI's needs for such consulting services." (Downs Counter-Decl. Ex. 1; Defs.'

Supplemental Br. Supp. Motion Regarding Employees at 3.) Defendants also argue that: (1)

Stokes did not receive a paycheck; (2) no taxes were withheld from his non-employee

compensation; and (3) he is not listed as an employee in the payroll records submitted to the

Court.

In his affidavit, Ben Valocchi, Sr. states that he has performed accounting services for

GSI for approximately 30 hours per month since 1985. (Valocchi Aff. ¶ 1.) He also states that

he has received "the required annual IRS Form 1099" for his services. (Valocchi Aff. ¶ 2.) He

further explains that his son, Ben Valocchi, Jr., a certified public accountant, "prepared periodic

compilation financial statements and annual corporate tax returns as an independent contractor"

for GSI. (Valocchi Aff. ¶ 4.) Finally, Ben Valocchi, Sr. asserts that he has "never received

employee benefits." (Valocchi Aff. ¶ 3.)

In contrast, Pasquale has submitted a declaration and two undated documents described as

"Organizational Charts" to support her claim that GSI employed at least sixteen people during

2005 and at least seventeen people during 2006. In her declaration, Pasquale alleges that Stokes

was an employee of GSI in 2005 and 2006. (Pl.'s Resp. in Opp'n to Mot. Regarding Employees,

Pasquale Decl. Ex. C ¶¶ 8, 13.) Pasquale further claims that Peter Zavitsanos and Downs were

employees of GSI in 2005 and 2006. (Id. ¶¶ 9-12.) In support of this contention, Pasquale notes

that Peter Zavitsanos and Downs were on GSI's payroll during the relevant years and that they

received monthly paychecks from which standard withholding taxes were taken in those years.

(Id.)  As such, Pasquale claims that "there clearly exists a disputed issue of material fact, which prevents the entry of summary judgment on the issue of whether GSI is a statutory 'employer' for purposes of Title VII . . . ."  (Pl.'s Resp. in Opp'n to Mot. Regarding Employees at 11.)

On March 19, 2010, a hearing was held in order to allow the parties an opportunity to present further evidence in support of their respective positions on Defendants' Motion Regarding Employees.  At the hearing, Pasquale testified that "in the last year or so before [she] left, [Stokes] was sharing an office" at GSI and that he used the company's materials.  (Hr'g Tr. 14:3-10, Mar. 19, 2010.)  When asked whether Stokes was "either supervised or answerable to Mr. Rozansky," Pasquale responded that he was.  (Id. at 14:11-15.)  Pasquale also testified that Ben Valocchi[4] worked at GSI "a couple times a week," "had a desk in [Downs's] office" at GSI, reported to Downs and used the company's materials.  (Id. at 14:18-25.)  Pasquale stated, however, that Stokes and the Valocchis were not on GSI's payroll.  Pasquale further testified:  (1) that Stokes's efforts varied upon the needs of GSI; (2) that he worked at the GSI office periodically;[5] (3) that he had a home office; (4) that he sent an invoice to GSI upon completion of a task and that he was paid each time that an invoice was submitted; and (5) that he received 1099 compensation because he was paid according to the invoices.  Finally, Pasquale acknowledged that the Valocchis provided services to other individuals or entities besides GSI and that they maintained another office in Downingtown.  (Id. at 17:9-22.)

---

[4] Pasquale did not specify whether she was referring to Ben Valocchi, Sr. or Ben Valocchi, Jr. in her testimony.

[5] Specifically, counsel for Defendants asked Pasquale:  "Is it fair to say that . . . sometimes [Stokes] would come in fairly regularly, sometimes he would come in not at all?"  Pasquale responded:  "Yes."  (Id. at 15:25-16:4.)

## II.    STANDARDS OF REVIEW

Because Defendants make two distinct requests in their Motion Regarding Employees –
(1) that we grant summary judgment in their favor with respect to Count I, and (2) that we
decline to exercise jurisdiction over the state law claims if we dismiss Count I – we will treat
Defendants' Motion as a motion for summary judgment regarding Count I and a motion to
dismiss for lack of supplemental jurisdiction regarding Pasquale's remaining Counts.  See
Greenwood Partners, L.P. v. Cimnet, Inc., No. 2:01-6624, 2003 U.S. Dist. LEXIS 18099, at *3
(E.D. Pa. Sept. 26, 2003).

### 1.    Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is
proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to
judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Essentially, the inquiry is "whether the
evidence presents a sufficient disagreement to require submission to the jury or whether it is so
one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the Court of the
basis for the motion and identifying those portions of the record that demonstrate the absence of
a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is
genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for
the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might
affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but
rather, that party must go beyond the pleadings and present "specific facts showing a genuine

issue for trial." Fed. R. Civ. P. 56(e)(2). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. Celotex, 477 U.S. at 322-23. If the Court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. Id. at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

## 2.      Supplemental Jurisdiction

In United Mine Workers v. Gibbs, the Supreme Court established the concept that a district court could hear non-federal claims over which it did not have diversity jurisdiction provided those claims shared a "common nucleus of operative fact" with the claims that supported the court's original jurisdiction. 383 U.S. 715, 725 (1966). In 1990, Congress sought to "clarify and codify instances appropriate for the exercise of pendent or 'supplemental' jurisdiction in district courts" in 28 U.S.C. § 1367. Swint v. Chambers County Comm'n, 514 U.S. 35, 48 n.6 (1995); see also Sinclair v. Soniform, Inc., 935 F.2d 599, 603 (3d Cir. 1991) (treating 28 U.S.C. § 1367(a) as codifying the jurisdictional standard established in Gibbs).

Section 1367(a) states:

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). The "case and controversy" requirement is satisfied when the "state and

federal claims . . . derive from a common nucleus of operative fact."  Gibbs, 383 U.S. at 725.  "In trying to set out standards for supplemental jurisdiction and to apply them consistently, [the Third Circuit has] observe[d] that, like unhappy families, no two cases of supplemental jurisdiction are exactly alike."  Nanavati v. Burdette Tomlin Mem'l Hosp., 857 F.2d 96, 105 (3d Cir. 1988).  If the federal and state claims "are merely alternative theories of recovery based on the same acts," then supplemental jurisdiction exists.  Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995) (quoting Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479 (3d Cir. 1979) (internal quotation marks omitted)).  However, if the state law claims are "totally unrelated to a cause of action under federal law," then supplemental jurisdiction is lacking.[6]  Id.

Section 1367(c) states:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Thus, even if supplemental jurisdiction is found to exist in a case, "the discretion to exercise supplemental jurisdiction remains with the district court."  Greenwood,

_____

[6] The District of New Jersey has noted:

While some courts have read the "common nucleus of operative facts" to require only a "loose" nexus between a plaintiff's federal and state claims, the Third Circuit has expressly rejected this interpretation.  The Third Circuit has reasoned that "there is virtually no support for this broad reading of Article III and Gibbs."  As one court has noted, "[i]t is therefore apparent that the Third Circuit interprets § 1367 and Gibbs narrowly."

Armstrong v. Moylett, No. 00-3441, 2006 U.S. Dist. LEXIS 36650, at *7-8 (D.N.J. May 25, 2006) (internal and external citations omitted).

2003 U.S. Dist. LEXIS 18099, at *10; N.J. Turnpike Auth. v. PPG Indus., 197 F.3d 96, 113 (3d Cir. 1999) (stating that a district court's decision to exercise supplemental jurisdiction over a plaintiff's state law claims is discretionary). Moreover, district courts should "hesitate to exercise jurisdiction over state claims" if the "considerations of judicial economy, convenience and fairness to litigants . . . are not present . . . ." Gibbs, 383 U.S. at 726.

## III. DISCUSSION

### 1. Motion for Summary Judgment Regarding Count I

Defendants argue that Peter Zavitsanos and Downs are employers rather than employees, and therefore, should not be counted in determining the number of GSI employees. Pasquale, however, asserts that Peter Zavitsanos and Downs are in fact employees of GSI for purposes of her Title VII claim.

For the Title VII claim to withstand a motion for summary judgment, Pasquale must present "specific facts showing a genuine issue for trial" regarding whether GSI was an "employer" as defined under that statute. Fed. R. Civ. P. 56(e)(2). "The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year[] . . . ." 42 U.S.C. § 2000e(b). The fifteen-employee requirement contained in Title VII's definition of "employer" is an element of a plaintiff's cause of action. Doe v. Goldstein's Deli, 82 Fed. Appx. 773, 777 (3d Cir. 2003). The Third Circuit has explained that a "significant purpose of the fifteen-employee minimum in the Title VII context is to spare small companies the considerable expense of complying with the statute's many-nuanced requirements. This goal suggests that the fifteen-employee minimum should be strictly construed." Nesbit v. Gears

9

Unlimited, Inc., 347 F.3d 72, 85 (3d Cir. 2003) (internal citation omitted).

In this case, the alleged Title VII violation occurred in 2006.[7]  Thus, Pasquale must show that GSI had fifteen or more employees for either twenty or more weeks in 2005, or twenty or more weeks in 2006.  See Komorowski v. Townline Mini-Mart & Rest., 162 F.3d 962, 965 (7th Cir. 1998) ("Courts consistently have held that the phrase 'current calendar year' refers to the year in which the alleged discrimination occurred.  In examining the phrase in similar contexts, courts also have held that 'current calendar year' refers to the year in which the alleged discrimination occurred.") (citations omitted); see also Jensen v. Johnson County Youth Baseball League, 838 F. Supp. 1437, 1441 (D. Kan. 1993) ("Under this statute, the twenty or more weeks must occur within a twelve month period between January 1 and December 31.") (citing Dumas v. Town of Mt. Vernon, Ala., 612 F.2d 974, 979-80 (5th Cir. 1980)).  Pasquale must establish the number of employees by a preponderance of the evidence.  Goldstein's Deli, 82 Fed. Appx. at 777 (finding that the preponderance of the evidence standard is the "correct standard" for determining whether a plaintiff has established that a defendant was an "employer" under Title VII).

The term "employee" is defined in Title VII simply as "an individual employed by an employer."  42 U.S.C. § 2000e(f).  The Supreme Court has held that in determining whether an employer employs fifteen or more employees, courts shall apply the "payroll method," which

---

[7] Pasquale argues that the Pennsylvania Human Relations Committee complaint was filed with the Equal Employment Opportunity Commission ("EEOC") on March 9, 2007, and that this filing date fixes the earliest date of conduct complained about 300 days earlier on May 13, 2006.  Defendants, however, argue that "it appears that the focus would be placed on the twenty weeks preceding her alleged firing on September 15, 2006."  (Defs.' Br. Supp. Mot. Regarding Employees at 5.)  In any event, the parties seem to agree that the alleged Title VII violation occurred in 2006.

looks to the number of employees engaged in an employment relationship with the employer on each work day in each of twenty or more calendar weeks in the current or preceding calendar year. See Walters v. Metro. Educ. Enters., 519 U.S. 202 (1997). "The test is called the 'payroll method' because 'the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll.'" Babich v. Mgmt. & Tech. Res., Inc., No. 06-1502, 2008 U.S. Dist. LEXIS 8806, at *7 (W.D. Pa. Feb. 6, 2008) (quoting Walters, 519 U.S. at 206). Merely being on payroll, however, is not dispositive of the issue of whether an individual is an "employee." De Jesus v. LTT Card Servs., 474 F.3d 16, 22 (1st Cir. 2007) (vacating entry of summary judgment in former employer's favor where district court failed to engage in six-factor inquiry set forth in Clackamas Gastroenterology Associates v. Wells, 538 U.S. 440 (2003)); see also Babich, 2008 U.S. Dist. LEXIS 8806, at *7. "Rather, the ultimate criterion is the existence of an employment relationship. Thus, an individual who appears on the payroll, but who is not an 'employee' under traditional principles of agency law, would not count toward the 15-employee minimum." Babich, 2008 U.S. Dist. LEXIS 8806, at *7-8 (citations omitted).

## A.     Whether Peter Zavitsanos and Downs are Employers or Employees

The six-factor standard for determining whether an individual is an employer rather than an employee is set forth by the Supreme Court in Clackamas:  (1) "[w]hether the organization can hire or fire the individual or set the rules and regulations of the individual's work"; (2) "[w]hether and, if so, to what extent the organization supervises the individual's work"; (3) "[w]hether the individual reports to someone higher in the organization"; (4) "[w]hether and, if so, to what extent the individual is able to influence the organization"; (5) "[w]hether the parties intended that the individual be an employee, as expressed in written agreements or contracts";

11

and (6) "[w]hether the individual shares in the profits, losses, and liabilities of the organization." 538 U.S. at 449-50 (quoting EEOC Compliance Manual § 605:0009 (2000)) (internal quotation marks omitted).

As previously discussed, for her Title VII claim to withstand a motion for summary judgment, Pasquale must present "specific facts showing a genuine issue for trial" regarding whether GSI was an "employer" as defined under that statute. Fed. R. Civ. P. 56(e)(2). In her declaration, Pasquale states that Peter Zavitsanos and Downs received monthly paychecks "from which standard withholding taxes were taken." (Pl.'s Resp. in Opp'n to Mot. Regarding Employees, Pasquale Decl. Ex. C ¶¶ 10, 12.) The assertion alone, however, fails to cause any of the Clackamas factors to weigh in her favor. The remainder of her declaration simply sets forth conclusory allegations such as "General Sciences employed Peter Zavitsanos, Evelyn (Zavitsanos) Downs and Charlie Stokes" (id. ¶ 8), and therefore, is unhelpful for our analysis. Pasquale's two undated documents described as "Organizational Charts" are equally unhelpful because they offer no proof as to the number of individuals employed at GSI in 2005 and 2006 – the years during which Pasquale bears the burden to prove that GSI had "fifteen or more employees for each working day in each of twenty or more calendar weeks." 42 U.S.C. § 2000e(b). Thus, Pasquale's only credible evidence that Peter Zavitsanos and Downs were employees of GSI in 2005 and 2006 is that these two individuals were on GSI's payroll during the relevant years. As mentioned, however, merely being on payroll is not dispositive of the issue of whether an individual is an "employee." De Jesus, 474 F.3d at 22.

Defendants, in contrast, have offered sworn affidavits that address a number of the Clackamas factors. In his affidavit, Peter Zavitsanos states:

> [M]y daughter Evelyn [Downs] and I . . . are the owners of the company who are actively involved in managing and operating it. We have over the last many years shared in that responsibility and have exclusively controlled the operations of GSI. Evelyn generally runs the financial aspects of the company, while I focus on the operations side. We share in profits, set company policy and procedure, and do not report to anyone. No one supervises our work. We are not the subject of any employment agreements . . . .

(Zavitsanos Aff. ¶ 7.) Similarly, in her affidavit, Downs asserts that only she and Peter Zavitsanos "have ever been involved in the daily operations and management of the company." (Defs.' Mot. Regarding Employees, Downs Aff. Ex. A ¶ 4.) Moreover, in her counter-declaration, Downs states that she and Peter Zavitsanos: (1) "direct and dictate all policies concerning personnel, management, operations, finances and all other matters"; (2) "share in the profits of the business"; (3) "do not report to anyone higher in the company and no one supervises our work"; and (4) "are not parties to any employment agreements with GSI." (Downs Counter-Decl. ¶¶ 9-10.)

Therefore, considering all of the facts to which Defendants have sworn in their submissions to the Court and viewing all of the evidence in a light most favorable to Pasquale, the Court finds that Pasquale has failed to meet her burden of showing a genuine issue for trial regarding whether Peter Zavitsanos and Downs were employees of GSI during the relevant time period, as defined under Title VII and the applicable case law.

**B.      Whether Stokes and the Valocchis are Independent Contractors or Employees**

The Supreme Court in <u>Nationwide Mutual Insurance Company v. Darden</u> adopted a common-law test for determining whether an individual is an employee or an independent contractor. 503 U.S. 318 (1992). The Court found that the determination required courts to consider the following non-exhaustive factors: (1) "the hiring party's right to control the manner

and means by which the product is accomplished"; (2) "the skill required"; (3) "the source of the instrumentalities and tools"; (4) "the location of the work"; (5) "the duration of the relationship between the parties"; (6) "whether the hiring party has the right to assign additional projects to the hired party"; (7) "the extent of the hired party's discretion over when and how long to work"; (8) "the method of payment"; (9) "the hired party's role in hiring and paying assistants"; (10) "whether the work is part of the regular business of the hiring party"; (11) "whether the hiring party is in business"; (12) "the provision of employee benefits"; and (13) "the tax treatment of the hired party." Id. at 323-24. Because the common-law test contains "no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." Id. at 324 (quoting NLRB v. United Ins. Co. of Am., 390 U.S. 254, 258 (1968)). Therefore, we will address each of these factors in turn.

### i. Hiring Party's Right to Control

Regarding the first factor, Pasquale testified at the March 19th hearing that Ben Valocchi reported to Downs. There is no evidence, however, that the Valocchis were not free to determine the manner and means of how they completed their accounting services. See Alba v. Hous. Auth., 400 F. Supp. 2d 685, 695 (M.D. Pa. 2005) (applying Darden factors to the issue of whether an accountant was an employee or an independent contractor and determining that the accountant was the latter). Further, as noted above, Ben Valocchi, Sr. asserts that his son, Ben Valocchi, Jr., a certified public accountant, "prepared periodic compilation financial statements and annual corporate tax returns as an independent contractor" for GSI. (Valocchi Aff. ¶ 4.) The preparation of reports, however, "is not an indication of employee status; it does not indicate . . .

14

supervision or control of ones's daily activity." <u>Samson v. Harvey's Lake Borough</u>, 881 F. Supp. 138, 143 (M.D. Pa. 1995).

Regarding Stokes, Downs describes him as "an independent contractor who, from time to time, provided consulting services (chemical and thermal analysis and flight pay-load analysis) . . . ." (Downs Counter-Decl. ¶ 7.)  When asked whether Stokes was "either supervised or answerable to Mr. Rozansky," Pasquale responded that he was.  (Hr'g Tr. 14:11-15, Mar. 19, 2010.)  There is no evidence, however, that Mr. Rozansky actually had the right to control the manner and means by which the consulting services were provided.  Further, the fact that Stokes maintained a home office and that his compensation from GSI varied from $20,540 in 2005 to $6,296 in 2006 indicates that Stokes worked for other individuals or entities besides GSI.  Therefore, under the first and "most significant <u>Darden</u> factor," <u>see</u> <u>Alba</u>, 400 F. Supp. 2d at 695, we find that it weighs in favor of a determination that Stokes and the Valocchis are independent contractors of GSI and not employees.

### ii. Skill Required

There is no evidence to suggest that the accounting skills utilized by the Valocchis were derived from GSI.  There is also no evidence that GSI trained the Valocchis, nor is there evidence that GSI was responsible for the Valocchis' licensing fees.  <u>See</u> <u>id.</u> at 696.  The record is likewise devoid of any evidence that GSI trained Stokes to provide consulting services involving chemical and thermal analysis and flight pay-load analysis.  <u>Id.</u>  Thus, the Court does not find the second <u>Darden</u> factor to be helpful for Pasquale.

### iii. Source of Instrumentalities and Tools

At the March 19th hearing, Pasquale stated that Stokes used the company's materials.

Pasquale also stated that Ben Valocchi used the company's materials.  Other than these conclusory assertions, there is no evidence that GSI actually provided Stokes or the Valocchis with any of the tools and professional resources they may have needed to render their services.  Moreover, there is no evidence that there were any specific professional requirements with which GSI mandated compliance by the Valocchis and Stokes.  See id.  Therefore, the Court finds the third Darden factor to be unavailing for Pasquale.

### iv. Location of Work

Pasquale stated at the hearing that "in the last year or so before [she] left, [Stokes] was sharing an office" at GSI.  Pasquale also testified that Ben Valocchi worked at GSI "a couple times a week" and "had a desk in [Downs's] office."  Nevertheless, the designation of a worker's location of work, absent the employer's control over the work itself and the manner in which it is performed, does not make the worker an "employee."  Id.

Pasquale acknowledged at the hearing that the Valocchis provided services to other individuals or entities besides GSI and that they maintained another office in Downingtown.  In his affidavit, Ben Valocchi, Sr. identified his address in Downingtown several times in the document.  Pasquale also testified that Stokes maintained a home office.  As with the accountant in Alba, the Valocchis and Stokes worked for GSI as needed and apparently worked elsewhere when they were not needed at GSI.  Id.  There is also no evidence that GSI required Stokes and the Valocchis to perform their work at GSI's offices.  See id.  Thus, the fourth Darden factor weighs in favor of Defendants.

### v. Duration of Relationship Between Parties

In his affidavit, Ben Valocchi, Sr. states that he has performed accounting services for

GSI for approximately 30 hours per month since 1985. (Valocchi Aff. ¶ 1.) Stokes states in his affidavit that he has worked for GSI as "an independent contractor/consultant for approximately 16 years." (Stokes Aff. ¶ 1.) In Alba, a 2005 decision, the court noted that the accountant in that case had been rendering services to the hiring party since the 1970's. 400 F. Supp. 2d at 696. However, the court added:

> [N]one of the workers have been shown to be full-time with [the hiring party] during any of their tenures. . . . Thus, while [the hiring party] and the workers had considerably lengthy relationships of numerous years, they were not on a full-time basis and were limited in terms of compensation. They received no pensions or paid benefits from [the hiring party].

Id. at 696-97. As mentioned, in this case, Pasquale testified that Ben Valocchi worked at GSI "a couple times a week" and that Stokes worked at the GSI office periodically. Pasquale also does not deny that Stokes did not receive a paycheck or employee benefits and that the extent of the services he provided to GSI varied from year to year depending on GSI's needs. Therefore, the Court does not find the fifth Darden factor to be helpful for Pasquale.

### vi. Hiring Party's Right to Assign Additional Projects

"In a conventional employment relationship, the hired party may typically be assigned additional projects at his employer's behest. However, independent contractors typically are hired for a particular project and the hiring party generally may not unilaterally assign additional duties to the hired party." Alcatel U.S. v. Cisco Sys., No. 00-199, 2001 U.S. Dist. LEXIS 25113, at *26 (E.D. Tex. Oct. 30, 2001). As previously discussed, Stokes and the Valocchis provided consulting and accounting services, respectively, as needed by GSI. Pasquale testified that Stokes sent an invoice to GSI upon completion of a task and that he was paid each time that an invoice was submitted. Thus, while it is unclear whether Stokes or the Valocchis were

contractually obligated to accept additional projects from GSI, the nature of their work and the fact that Stokes was paid according to invoices suggests that GSI probably could not unilaterally assign additional duties to Stokes and the Valocchis.  Thus, the sixth <u>Darden</u> factor weighs in favor of Defendants.

### vii. Extent of Hired Party's Discretion

Regarding this factor, the court in <u>Alba</u> explained:

> The evidence . . . shows that [the accountant] worked as needed.  There is no evidence that [the hiring party] required any of these workers . . . to work on a full-time basis.  There is no evidence that the [workers] had to work a certain number of hours per month for [the hiring party]. . . . Thus, the workers could work flexible hours, and [the hiring party] did not control their daily schedules and the length of hours which they worked. . . . <u>Darden</u> factor number 7 weighs in favor of Defendants' position that the workers were independent contractors and against Plaintiff's position.

400 F. Supp. 2d at 697 (citations omitted).  Here, as discussed, Pasquale stated at the hearing that Ben Valocchi worked at GSI "a couple times a week" and agreed with defense counsel that it is "fair to say that . . . sometimes [Stokes] would come in fairly regularly, sometimes he would come in not at all."  (Hr'g Tr. 15:25-16:4, Mar. 19, 2010.)  This evidence suggests that the hours of Stokes and the Valocchis were fairly flexible.  There is also no evidence that Stokes and the Valocchis were required to work a certain number of hours per month for GSI or that GSI could control their daily schedules and the length of hours which they worked.  Thus, the seventh <u>Darden</u> factor also favors Defendants.

### viii. Method of Payment

In <u>Alba</u>, the court noted that:

> [The worker] submits an invoice to [the hiring party] at the end of each month, and [the hiring party] pays it.  The [other workers] work as needed and they are

> paid a fixed amount under their contracts. . . . There is no evidence that [the
> hiring party] paid these workers any fringe benefits, retirement benefits, sick day
> pay or vacation pay. Further, the evidence shows that [the hiring party] did not
> pay for any insurance benefits for any of the stated workers.

400 F. Supp. 2d at 697. Here, Pasquale testified that Stokes and the Valocchis were not on GSI's

payroll. There is also no evidence that any of them received salary or employee benefits. On the

contrary, Ben Valocchi, Sr. states in his affidavit that he has received "the required annual IRS

Form 1099" for his services and that he has "never received employee benefits." Stokes also

states in his affidavit that he has "never received any employee benefits such as[] a 401K plan,

health benefits, etc. or any compensation other than that based on an hourly rate for

consultation." Pasquale also testified that Stokes sent an invoice to GSI upon completion of a

task and that he was paid each time that an invoice was submitted. Further, Stokes received 1099

compensation because he was paid according to the invoices. Defendants have submitted

Stokes's 1099s for 2005 and 2006, reflecting that no taxes were withheld from his non-employee

compensation. Therefore, the eighth <u>Darden</u> factor weighs in favor of Defendants.

### ix. Hired Party's Role in Hiring and Paying Assistants

There is no evidence that Stokes or the Valocchis could hire and pay any assistants. We

therefore find it unlikely that they could have had a role in hiring an assistant which would have

rendered that assistant in any way affiliated with GSI. <u>See</u> <u>id.</u> at 697-98. As such, the ninth

<u>Darden</u> factor favors Defendants.

### x. Regular Business of Hiring Party

GSI's website states: "General Sciences, Inc. is a leader in innovative applications of

reactive materials to solve complicated problems. For 24 years[,] GSI has worked with DoD,

NASA, Sandia and MIT/LL providing excellent solutions to a variety of problems." General

Sciences Incorporated, http://general-sciences.com/ (last visited Apr. 13, 2010). The website

then lists the company's "areas of expertise": "Enhanced Lethality Concepts/Materials For MDA

Interceptors"; "Warhead Development - Thermobaric Munition Research, Chem/Bio Agent

Defeat, Thermal Accelerent Materials For Facility Defeat"; "Countermeasures- Decoys,

Obscurants, High Altitude Flares, Heated Objects and Surfaces"; "Mine Neutralization- Military

Land,[]Beach/Surf Humanitarian Applications"; and "Advanced Materials- Reactive Shaped

Charge Liners, Reactive Fragments,[]Ceramics, Metal Matrix Composites, Reentry Reactive

Heat Shield Materials For Lethality Enhancement, Intermetallic Reactive Composites." Id.

        As mentioned, Downs describes Stokes in her counter-declaration as "an independent

contractor who, from time to time, provided consulting services (chemical and thermal analysis

and flight pay-load analysis) . . . ." The Valocchis, as public accountants, have performed

accounting work for GSI, including preparing "periodic compilation financial statements and

annual corporate tax returns." Such accounting work is clearly not part of the regular business of

GSI. Thus, this factor favors a finding that the Valocchis are independent contractors rather than

employees of GSI. While Pasquale has not argued that GSI's regular business includes chemical

and thermal analysis and flight pay-load analysis, we will assume from the information on GSI's

website that it does. Therefore, this factor weighs in favor of a finding that Stokes is an

employee of GSI.

### xi. Whether Hiring Party is in Business

        The Sixth Circuit has stated that "the factor relating to whether the hiring party is in

business is irrelevant and unhelpful to this analysis, as almost any hiring party is in business."

<u>Weary v. Cochran</u>, 377 F.3d 522, 525 n.1 (6th Cir. 2004).  We agree, and therefore, do not place any weight on this factor.

### xii. Provision of Employee Benefits

In his affidavit, Stokes states that he has "never received any employee benefits such as[] a 401K plan, health benefits, etc. or any compensation other than that based on an hourly rate for consultation."  Likewise, Ben Valocchi, Sr. states in his affidavit that he has "never received employee benefits."  Pasquale has not challenged this assertion.  Thus, the twelfth <u>Darden</u> factor favors Defendants.

### xiii. Tax Treatment of Hired Party

As mentioned, Ben Valocchi, Sr. states in his affidavit that he has received "the required annual IRS Form 1099" for his services.  Defendants have also submitted tax records for 2005 and 2006 to support their contention that Stokes was an independent contractor who received 1099 compensation.  Defendants further argue that:  (1) Stokes did not receive a paycheck or employee benefits; (2) no taxes were withheld from Stokes's non-employee compensation; and (3) Stokes and the Valocchis are not listed as employees in the payroll records submitted to the Court.  Pasquale has not presented any evidence which contradicts Defendants' submissions to the Court.  As a result, we find that the final <u>Darden</u> factor weighs in Defendants' favor.

Based upon the totality of the circumstances, we conclude that the majority of the factors weigh against a finding that Stokes and the Valocchis were employees of GSI.  Rather, in considering the foregoing factors and viewing the evidence in a light most favorable to Pasquale, we find as a matter of law that Stokes and the Valocchis were independent contractors at GSI during 2005 and 2006.  Having already determined that Peter Zavitsanos and Downs were not

employees of GSI during 2005 or 2006, we conclude that Pasquale has failed to meet her burden

of showing a genuine issue for trial regarding whether GSI had fifteen or more employees during

the relevant time period, as defined under Title VII and the applicable case law.  As such,

summary judgment in favor of Defendants is appropriate.

**2.      Motion to Dismiss for Lack of Supplemental Jurisdiction Regarding Pasquale's Remaining Counts**

Having determined that Pasquale has failed to show a genuine issue for trial regarding an

element of her cause of action in Count I, we turn now to the question of whether this Court has

supplemental jurisdiction over Pasquale's state law claims and, if so, whether we should exercise

such jurisdiction.[8]  Pasquale's state law claims allege violations of the PHRA, breach of contract

and promissory estoppel/detrimental reliance.  These claims incorporate by reference the

allegations of the previous paragraphs in the Complaint and clearly relate to the alleged

discriminatory conduct and Pasquale's alleged firing.  Nevertheless, "[b]ecause Plaintiff's

[federal] claim has been dismissed, the question of whether there exists a common nucleus of

operative facts is moot."  Greenwood, 2003 U.S. Dist. LEXIS 18099, at *10.  Even if the

question were not moot, however, we find it appropriate to decline to exercise supplemental

jurisdiction over Pasquale's state law claims pursuant to 28 U.S.C. § 1367(c).

As mentioned, the district courts may decline to exercise supplemental jurisdiction over a

claim under § 1367(a) if, inter alia, the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction, or the district court has dismissed all of the

---

[8] We begin by noting that the Court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332; consequently, we may not entertain Pasquale's state law claims if we do not have supplemental jurisdiction. See Armstrong, 2006 U.S. Dist. LEXIS 36650, at *5 n.4.

claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).

Here, we have dismissed Pasquale's federal claim and there are no claims remaining over which we have original jurisdiction.  Therefore, pursuant to § 1367(c)(3), we should decline to exercise supplemental jurisdiction over the surviving state law claims.  See Gibbs, 383 U.S. at 726 ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."); see also Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 181 (3d Cir. 1999) (declining to disturb district court's dismissal of plaintiff's remaining "territorial claims," but nevertheless requiring district court to amend its order to reflect dismissal of claims "without prejudice"); MCF Servs. v. Ernest Bock & Sons, No. 05-1115, 2007 U.S. Dist. LEXIS 91531, at *9-10 (E.D. Pa. Dec. 11, 2007) (declining to exercise supplemental jurisdiction over state law claims pursuant to § 1367(c)(3)); Campbell v. Kelly, No. 02-6814, 2003 U.S. Dist. LEXIS 12216, at *11 (E.D. Pa. July 14, 2003) (dismissing federal claims and pendant state law claims pursuant to § 1367(c)(3)).  Moreover, because we have dismissed Pasquale's only federal claim, the PHRA, breach of contract and promissory estoppel/detrimental reliance claims predominate by default.  See Greenwood, 2003 U.S. Dist. LEXIS 18099, at *11.

We also note that § 1367 ensures that the statute of limitations is tolled to preserve the right of litigants to effective relief in state court in the event that a federal court declines to exercise its supplemental jurisdiction.  Id. at *12 (citation omitted); see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (stating that Congress had foreseen such a problem and provided in § 1367(d) that the period of limitations for a pendant state law claim shall be tolled while the claim is pending in federal court or for "a period of 30 days after it is dismissed unless

State law provides for a longer tolling period").  It has not been alleged that the principles of economy, convenience, fairness and comity would be ill-served by our decision not to exercise supplemental jurisdiction here.  On the contrary, Pasquale can use the evidence gained in discovery to pursue her state law claims in state court.  See MCF, 2007 U.S. Dist. LEXIS 91531, at *12.  Therefore, upon consideration of the foregoing factors and the facts of this case, the Court declines to exercise supplemental jurisdiction over Pasquale's state law claims.

As such, for the reasons stated herein, we will grant Defendants' Motion Regarding Employees and dismiss Count I with prejudice.  Furthermore, we will deny Defendants' remaining Motions as moot and dismiss Pasquale's state law claims without prejudice.

An appropriate Order follows.